**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **AQUALLIANCE,**<br><br>    **Plaintiff,**<br><br>        v.<br><br>**UNITED STATES BUREAU OF**<br>**RECLAMATION,**<br><br>    **Defendant.** | **Civil Action No. 21-632 (JEB)** |

## <u>MEMORANDUM OPINION</u>

Plaintiff non-profit AquAlliance filed a Freedom of Information Act request with the U.S. Bureau of Reclamation, a water-management agency housed in the Department of Commerce, seeking summaries of certain 2020 water transfers. When the Bureau's search came up empty, Plaintiff sued, and the parties now cross-move for summary judgment. At the end of the day, the question is whether the Bureau could satisfy its obligations under FOIA by searching just for summaries or whether it had a duty to look for the underlying information as well. Finding that AquAlliance specifically requested summaries, the Court grants judgment in the Bureau's favor.

## I.    Background

"AquAlliance is a public benefit corporation that promotes the preservation, conservation, and restoration of Northern California waters and special status species and their habitats." ECF No. 13-2 (Declaration of Christopher S. Miller), Exh. 1 (Pl. FOIA Request) at 1. On September 3, 2020, it mailed a FOIA request to the Bureau asking for "a summary of the water transfers taking place in 2020 under the Bureau and SLDWA's [San Luis & Delta-Mendota Water Authority's] Long-Term Water Transfer program. The summary should contain

1

at least the very basic information of a water transfer: seller, buyer, amount of water, how the water is made available, window of time that the transfer takes place, and if the transfer was approved." Id.

Given that the Division of Resources Management (DRM) in Region 10 — the California Great Basin (CGB) — was the only Bureau "office likely to maintain records concerning water transfer information within the Region," Regional FOIA Officer Christopher Miller forwarded the request there. See Miller Decl., ¶¶ 1, 6. More specifically, he consulted with acting Division Manager Sheryl Looper, "who had many years of expertise with the subject matter of the underlying request and was the custodian in best position to determine where responsive records would be maintained and where to find summary information." Id., ¶ 6. Looper then searched in "the only possible location of responsive records for a summary of this kind." Id., ¶ 7. She determined that none existed. Id.

This was not a surprise since such a summary is "no longer . . . routinely made by Reclamation and one that Reclamation was never under any legal or other obligation to create." Id. Looper noted that her office would compile certain information about water transfers, but that such compilation would not be "available until late into the year." Id., ¶ 9 (internal quotation marks omitted). The full 2020 information would not be available until early 2021. Id., ¶ 10. Looper also explained to Miller that the Bureau "began using a new process in 2020 in which the CGB office now relies on the California-owned Water Transfer Information Management System . . . to officially receive, review, and track water transfers." Id., ¶ 7. That is why a link to that system was provided to Plaintiff with the Bureau's final response on September 23, 2020. Id., ¶ 12.

Dissatisfied nonetheless, Plaintiff brought this action, and both sides have now cross-

moved for summary judgment.

## II.    Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992)).

FOIA cases typically and appropriately are decided on motions for summary judgment. Id.; Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof. See DOJ v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record []or by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption

of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III.   Analysis

The law concerning the adequacy of a search is very familiar to courts in this Circuit. "An agency fulfills its obligations . . . if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy of an agency's search for documents "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. A search-adequacy inquiry includes consideration of facial validity and any specific deficiencies in the scope of the search. See Huntington v. U.S. Dep't of Commerce, 234 F. Supp. 3d 94, 103 (D.D.C. 2017).

The issue here, however, is slightly different. Plaintiff is not complaining that the Bureau insufficiently searched for summaries; indeed, AquAlliance currently acknowledges, "It is now apparent that the agency does not prepare such a 'summary.'" ECF No. 14 (Pl. Opp. and MSJ) at 6. Instead, AquAlliance contends that Defendant should have looked for the underlying material as well. Id. Teed up, then, the only real question here is quite straightforward: was searching for summaries enough?

The Bureau understandably posits that it did precisely what Plaintiff requested. Recall

that AquAlliance's letter asked for "a summary of the water transfers taking place in 2020 . . . .
The summary should contain . . . ." Pl. FOIA Request at 1. This is not a situation in which the
Government is playing it cute — that is, knowing what a requester really wants but acting with
willful blindness in following the literal terms of a request. On the contrary, Plaintiff itself
points out in briefing that it "asked for a summary because it did not need every single document
which contained the basic information it sought." Pl. Opp. and MSJ at 7. In other words,
AquAlliance really did want summaries. The Government has thus not violated the precept that
it "'must liberally interpret the request and frame its search accordingly.'" Id. at 6 (quoting
Gov't Accountability Project v. DHS, 335 F. Supp. 3d 7, 12 (D.D.C. 2018)).

Plaintiff nevertheless rejoins that Defendant should not have "only searched for
documents that included the word 'summary' in their titles" and that "there are certainly many
documents that exist which contain the information sought by AquAlliance." Id. at 5. But the
Bureau explains that it did not "merely limit its search to 'documents that included the word
"summary" in their titles.'" ECF No. 21 (Def. Opp. and Reply) at 4; see also ECF No. 23 (Pl.
Reply) at 3 (acknowledging same). And while documents may exist that contain some of the
sought information, Plaintiff does not describe what those could be and concedes that they are
not summaries.

Finally, to the extent that AquAlliance would like the Bureau to create a summary using
the information in its possession, it is well established that the Government was under no
obligation to do so. See, e.g., Kissinger v. Reporters Comm. For Freedom of the Press, 445 U.S.
136, 152 (1980) ("[FOIA] does not obligate agencies to create or retain documents; it
only obligates them to provide access to those which it in fact has created and retained.").

**IV.      Conclusion**

For the foregoing reasons, the Court will grant Defendant's Motion for Summary

Judgment.  An Order accompanies this Memorandum Opinion.

<u>/s/ James E. Boasberg</u>
JAMES E. BOASBERG
United States District Judge

Date:  <u>December 8, 2021</u>